```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
FIRST GUARANTY MORTGAGE,
CORP.,                          *

     Plaintiff,                 *     CIVIL NO.: WDQ-03-3259

v.                              *

JOHN BRYANT, ET AL.,            *

     Defendants.                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

First Guaranty Mortgage Corporation ("First Guaranty") sued, *inter alia*,[1] Valerie Borders, Jervis Bryant, John Bryant, Bryant Enterprises, Inc., Scott Davis, Eric A. Patterson, Brendan Reilly, and Monica Silver for alleged violations of the Racketeer

---

[1] First Guaranty's initial complaint named many defendants that have subsequently been dismissed. On March 30, 2004, the Court approved First Guaranty's consent to the dismissal of Re/Max One. Paper No. 40. On December 20, 2005, the Court dismissed Conroy, Ballman and Dameron, Chartered ("Conroy") as a defendant, Paper No. 115; however, on November 3, 2005, Conroy had filed a counterclaim. On January 6, 2006 the Court approved Conroy's stipulation of dismissal without prejudice of its counterclaim against First Guaranty. Paper No. 122. On March 9, 2006, the Court granted the motions for judgment on the pleadings of Beltway Title and Abstract, Inc. and Brennan Title Company. Paper No. 130. On July 12, 2006, the Court approved a stipulation of dismissal as to R&M Appraisal Services, LLC and Ronald Brvenik. On December 18, 2006, the Court approved a stipulation of dismissal as to Richard Minor. On January 3, 2007 a settlement order dismissing HTR Enterprises was filed under Local Rule 111. Paper No. 160. On May 31, 2007, the Court approved a stipulation of dismissal as to Lynn Kromminga. Paper No. 174.

1

Influenced and Corrupt Organizations Act[2] ("RICO"), fraud, negligent misrepresentation, and civil conspiracy arising out of a loan fraud scheme.

Pending are (1) motions for Summary Judgment filed by First Guaranty and Silver; and (2) two motions for default judgment filed by First Guaranty. For the reasons discussed below, the motions for summary judgment filed by First Guaranty and Silver will be denied. In addition, First Guaranty's first motion for default judgment will be denied and the second will be granted.

I. Background

First Guaranty is a corporation in the business of originating and brokering residential mortgage loans. Am. Compl. ¶ 21. To make loan decisions, First Guaranty relies on representations from several sources, including: mortgage brokers, loan officers, real estate brokers, real estate appraisers, real estate attorneys, and mortgage applicants. *Id*. ¶ 22.

On November 13, 2003, First Guaranty sued the Defendants, alleging that it incurred losses from a real estate "flipping" scheme (the "Flipping Scheme")[3] in which it was defrauded into

---

[2] 18 U.S.C. §§ 1961 et seq.

[3] In the Flipping Scheme, the Defendants "would identify individuals with poor credit ratings and other deficiencies, and offer them the opportunity to purchase a home, or locate straw buyers who, for a monetary consideration, would participate in

issuing loans in excess of the value and sale price of properties in Maryland as a result of illegal activities and false documentation submitted by the Defendants to First Guaranty. *Id.* ¶ 23. These proceedings were stayed pending resolution of the related criminal action, *U.S. v. Bryant, et al.*, No.: 8:03-cr-0302-AW-ALL (D. Md. 2005), in which Borders, Jervis Bryant, John Bryant, Davis, Reilly, and Silver were charged with crimes related to the Flipping Scheme.

On May 13, 2005, First Guaranty filed its Amended Complaint. The dismissals of other defendants have left four counts pending: (1) violation of 18 U.S.C. § 1962(c); (2) conspiracy to violate 18 U.S.C. § 1962(c); (3) Fraud and Negligent Misrepresentation; and (4) Civil Conspiracy.

II. Discussion

A.   The Motions for Summary Judgment

Preliminarily, the Court notes that Local Rule 105.2(c) states that "[i]f more than two parties intend to file motions in a multi-party case, counsel shall submit a proposed briefing

---

preparing false documentation to present themselves as qualified buyers to the Plaintiff. The Defendants would then submit false documentation to the Plaintiff, and obtain fraudulent appraisals that falsely inflated the true value of the properties offered as security for Plaintiff's loans, and use the proceeds from the funds provided by Plaintiff for the sale of such properties to the new buyers to pay for the properties being sold." Am. Compl. ¶ 23.

3

schedule when submitting their status report." Local Rule 105.2(c). The parties failed to follow this rule.

First Guaranty moved for summary judgment against six of the remaining defendants: Borders, Davis, Patterson, Reilly, and Silver (the "SJ Defendants")[4], arguing that there is no genuine issue of material fact as to any of its four claims. In Silver's motion for summary judgment (Paper No. 136) and subsequently reiterated in her Response to First Guaranty's Motion (Paper No. 140), she argued that First Guaranty suffered no damages. Reilly filed a response offering the same argument as Silver, and the remaining SJ Defendants did not respond to First Guaranty's motion.

First Guaranty opposed Silver's motion for summary judgment; Silver then filed a reply.

1. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

---

[4] Kromminga was included in First Guaranty's motion for summary judgment but settled before the Court issued this opinion.

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

2. Analysis

a. Civil Remedy for RICO violation

RICO provides a civil remedy for violations of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). To prevail in its civil RICO claim under 18 U.S.C. § 1962(c), First Guaranty must prove that the SJ Defendants:

> (1) were employed by or associated with
> (2) an enterprise
> (3) engaged in, or the activities of which affect, interstate or foreign commerce, and
> (4) that the defendants conducted or participated in the conduct of the enterprise's affairs
> (5) through a pattern of racketeering activity.

*Morley v. Cohen*, 610 F.Supp. 798, 810 (D. Md. 1985). First Guaranty must also prove that it was "injured in [its] business or property by reason of [the Defendants'] violation of section 1962(c)." *Id.* (*citing* 18 U.S.C. § 1964(c)).

5

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(c). "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). It "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. Importantly, however, "it is an entity *separate and apart* from the pattern of activity in which it engages." *Id*. (emphasis added).

Here the evidence is that the Defendants associated for the sole common purpose of defrauding First Guaranty into offering loans. Although the associates functioned as a continuing unit, the entity cannot be separated from the pattern of activity in which it engaged. There is insufficient evidence for a reasonable fact finder to find that the an 'enterprise' existed under 1962(c). Accordingly, a reasonable fact finder could not find for First Guaranty on Count I or II.

b.   Fraud, Negligent Misrepresentation, and Civil Conspiracy

i.   Liability

First Guaranty asserts that the SJ Defendants' signed plea

6

agreements, which contain fact statements, are sufficient evidence for summary judgment.  "[A] plea of guilty is to be considered as no more than an admission which may be explained rather than a conclusive statement which is binding when there has been no initial litigation of the issues." *St. Paul Fire & Marine Ins. Co. v. Lack*, 476 F.2d 583, 586 (4th Cir. 1973).  The SJ Defendants, however, have not offered an explanation contradicting or otherwise invalidating the admissions in their plea agreements.

The stipulated fact statements in the plea agreements of Silver, Reilly, Borders, and Davis established that they knowingly conspired with others to defraud mortgage lenders and financial institutions.  First Guaranty's Mem. Supp. Mot. for Summ. J. Ex. 4 at 6 (Silver Plea Agreement); Ex. 5 at 5 (Reilly Plea Agreement); Ex. 9 at 6 (Borders Plea Agreement); Ex. 11 at 5 (Davis Plea Agreement).

In Silver's motion for summary judgment, she argues that First Guaranty's contributory negligence, as established by this Court's Dec. 20, 2005 Mem. Op., functions as a defense to negligent misrepresentation.  As First Guaranty concedes this argument, there is no genuine issue of material fact as to negligent misrepresentation and no reasonable fact finder could find any of the Defendants liable for negligent misrepresentation.

Patterson was not indicted in the criminal trial and signed

no plea agreement admitting his participation in the conspiracy to defraud; his liability remains at issue.  However, as the remaining SJ Defendants have not challenged their admissions, there is no genuine issue of material fact as to their liability for fraud and civil conspiracy to commit fraud.

ii.  Injury to First Guaranty

First Guaranty seeks to recover its "total out of pocket" damages" caused by the Defendants; an amount it alleges is $85,363.08.  First Guaranty's Mem. Supp. Mot. for Summ. J. at 18.  Several of the SJ Defendants assert that First Guaranty earned nearly that amount in settlement fees for the loans on the properties involved in the Flipping Scheme.

Maryland Courts "flexibly" apply two theories of damages in fraud cases: (1) the out of pocket theory; and (2) the benefit of the bargain theory.  *Hinkle v. Rockville Motor Company*, 262 Md. 502, 504-05, 510 (1971).  A victim of fraud may elect to recover under either theory.  *Goldstein v. Miles*, 159 Md. App. 403, 422 (2004).  The out of pocket theory "will permit the plaintiff to recover his or her actual losses;" and the benefit of the bargain theory "puts the defrauded party in the same financial position as if the fraudulent representations had in fact been true."  *Id*. (citations omitted).  Not every victim, however, is entitled to employ the benefit of the bargain rule.  *Id*. at 423.

It has been said that the plaintiff should be allowed to

8

employ the benefit of the bargain method "if the trial judge, in his discretion considers that, in view of the probable moral culpability of the defendant and of the definiteness of the representations and the ascertainability of the represented value, the case is an appropriate one for such treatment." *Id*. at 425-26 (*quoting* Charles T. McCormick, *Handbook on the Law of Damages* § 121, at 454 (1935)).

The Defendants argue that: (1) the out of pocket method controls; and (2) the fees offset First Guaranty's expenses. First Guaranty has elected to seek the benefit of its bargain, and the SJ Defendants have admitted their fraud; accordingly, the Court will apply the benefit of the bargain rule to the damages in this case.  However, as the damages are the residue of First Guaranty's voluntary settlements with third parties, there must be a showing that the damages sought are reasonable or required. In short, there remain genuine issues of material fact as to First Guaranty's damages.  Accordingly, First Guaranty's motion for summary judgment will also be denied as to Counts III and IV, and the motion for summary judgment filed by Silver will also be denied.

B.   The Motions for Default Judgment

On October 31, 2006, First Guaranty filed a motion for default judgment against Defendants John Bryant, Bryant Enterprises, Inc., and Jervis Bryant (the "Default Defendants").

9

Paper No. 133.  Subsequently, First Guaranty filed a motion seeking an entry of default and default judgments against the same three defendants.  Paper No. 158.  Accordingly, the Court will treat the latter as a refiling of the former in an effort to comply with Fed. R. Civ. P. 55.  *See Rickards v. Solomon*, 457 F.Supp. 95, 100 (discussing the difference between default under Rule 55(a) and judgment by default under Rule 55(b)).

First Guaranty seeks default judgment because the Default Defendants have not filed an answer or responded to discovery requests.  John Bryant opposed the motion, arguing that he was in prison from April 2005 to May 2006 and has not since found employment.  John Bryant attempts to adopt Silver's arguments in her motion for summary judgment and her opposition to First Guaranty's motion for summary judgment.[5]

Entry of default judgment is within the court's discretion. *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005). Although "[t]he Fourth Circuit has a strong policy that cases be decided on their merits[,]" default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party."  *Id*. (citations omitted).

On November 13, 2003, First Guaranty filed its initial complaint.  During the pendency of the criminal proceedings,

---

[5] John Bryant was not named in First Guaranty's motion for summary judgment.

these proceedings were stayed; on May 16, 2005, First Guaranty filed an amended complaint. On October 31, 2006, First Guaranty filed its first motion for default judgment against the Default Defendants. Despite knowledge of the case in 2003, the Default Defendants have not filed answers and did not contact the Court until January 2007 when John Bryant filed his letter response to First Guaranty's motion for default judgment. John Bryant's imprisonment is not an excuse for his failure to answer. Entry of default judgment is therefore appropriate.

Under Fed. R. Civ. P. 55(b)(2) the court will conduct a hearing to determine the amount of damages for the defaults in this case. Accordingly, although default judgment will be granted as to the Default Defendants' liability, it will be denied as to damages for the reasons discussed above.

III. Conclusion

For the reasons discussed above, the motions for summary judgment filed by First Guaranty and Silver will be denied. However, the Court finds, for the reasons stated above, that no reasonable fact finder could find for First Guaranty on Counts I and II. In addition, although there is no genuine issue of material fact as to the liability of Borders, Davis, Reilly and Silver for Counts III and IV, there is a genuine issue of material fact as to First Guaranty's damages. First Guaranty's motion for default will be granted, however, the Court will hold

11

a hearing to determine damages.  A reasonable fact finder could not find the Defendants liable for negligent misrepresentation.


<u>June 7, 2007</u>                                   <u>           /s/            </u>
Date                                       William D. Quarles, Jr.
                                           United States District Judge